IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARMEN QUINTANA-DIEPPA** *Plaintiff* v. **MARK T. ESPER, SECRETARY OF THE ARMY, DEPARTMENT OF THE ARMY** *Defendants* | **CIVIL ACTION** Case No. 3:19-cv-1277 **Due Process Violation** **5th. Amendment** **42 U.S. Code §1983 Civil Action** **Equal Protection Clause** **Employment Discrimination: Race/Gender/Age** **Retaliation** *Demand for Jury Trial* |

**COMPLAINT**

### I.  INTRODUCTION

1. This civil action asks to determine federal employee *Carmen Quintana-Dieppa* ("Plaintiff"), right to *due process* was violated by defendants when she was unlawfully reassigned to a non-supervisory position, a *de facto* demotion, from her supervisory senior leadership position (equivalent to a GS-12) Child and Youth Services Coordinator NF-1701-04 on November 17, 2017 (letter dated Nov. 16, 2017). Plaintiff was not afforded a required advance notice nor *due process* to oppose or appeal defendants' adverse action. The action taken on November 17, 2017, was punitive and the letter (dated November 16, 2017) issued to plaintiff contained derogatory information. Dieppa is 62 years old and has worked for CYS for approximately thirty (30) years (since 1988), yet she was not given, nor afforded required 14-day advance notification by approval authority, to rebuttal, oppose or appeal defendant's 15-6 investigation results and her reassignment. The report was a pretextual basis for her immediate reassignment, a reassignment which was not a recommendation given by the investigator based on facts. AR 215-3 Nonappropriated Funds Instrumentalities Personnel Policy (5) required her employer to provide a 14-day advance notice to the employee. The plaintiff received the Agency's EEOC Final Decision on January 9, 2019.

1

2. Plaintiff Carmen Dieppa was given a 15-6 investigation results the *same day* she was given the reassignment letter and was informed that she didn't have the right to appeal or do a grievance. This was a *pretext* for discrimination because of her *age*, *race* and *gender*, and *retaliation* for prior protected activity, including the EEO complaint she had file earlier against Williams Leyh and Former COL Caryn Heard for employment discrimination (510-2015-00273X). Plaintiff asked to set aside her unlawful reassignment and defendants reinstate her back to her position with the promotion she had earned, but no avail.

3. IAW AR 215-3, non-appropriated funds personnel employees like the plaintiff must be provided a 14-day *advance* notice of proposed reassignment. Plaintiff, however, was issued a reassignment letter to a Project Management Position, NF-04 (equivalent to a GS-9-clerical) which was effective November 17, 2017, and her right to *due process* was violated. On November 17, 2017, she was asked to return her office keys, and to go home and was placed on administrative leave as directed by MWR Director Todd Scalf. A *de facto* demotion intended to subject her to public humiliation.

4. A copy of the report of the 15-6 investigation with the results was given to her on that *same day*, for the first time, along with the reassignment letter. The reassignment letter was based on the result of the investigation that took place from August 2016 through October 2016. The plaintiff was informed she didn't have the right to appeal or do a grievance with respect to her immediate reassignment, thus violating her right to *due process* and agency regulation. The reassignment was based on the investigation and not on IAW AR 215-3 management directed reassignment clause.

5. Prior to her unlawful retaliatory reassignment, the plaintiff had already complained to management about the *hostile work environment* she experienced as a result of the verbally abusive harassment she was subjected to by a subordinate. Plaintiff had asked defendants verbally

and in writing, to reassign that particular employee to another area. Defendants instead, removed her. This constituted a violation of the Equal Protection Clause and AR 215-3 Table of Penalties Chapter 7, 7-1, 7-19. On *September 19, 2014*, the plaintiff filed a discrimination complaint against defendants with the EEOC (**Charge No. 510-2015-00273X**) alleging harassment because of *race*.

6.  Defendants failed to timely investigate her *latest* discrimination complaint filed with the EEOC. (**Charge No. 510-2019-00015X**) The investigation was not processed within timeframe required by law (180 days) and EEOC Administrative Judge Patrick A. Kokenge issued an Order on October 12, 2018, requiring Fort Buchannan to produce documents within 15 days for failure to investigate plaintiff's EEOC Charge pursuant to EEO MD-110, Chapter 6. Defendant violated her right to due process and 29 CFR 1514.401 *et al.* (Docket#ARFTBUC18JAN00284)

7.  Due process required defendant's officials to afford the plaintiff the opportunity to be heard and the decision to be made by a neutral decision maker. Here IAW due process clauses, the Fifth and Fourteenth Amendments, and Equal Protection clause of the U.S. Constitution were violated, and defendant's officials violated plaintiff's procedural *due process* rights as required by law. The Douglas Factors were not considered by defendant when the adverse action was taken, and her rights violated. See <u>Douglas vs Veterans Administration</u> 5M.S.P.R., page 280 (1981).

8.  Plaintiff asks to reverse the action taken by defendants. Defendants failed to provide required *advanced* notice *before effective date* of proposed demotion was to take place and the plaintiff was subjected to disparate treatment shortly after complaining to her employer about a *hostile work environment*. Plaintiff was deprived of her right to be heard, to know the evidence used by defendant, to cross-examine witnesses, present her testimony or witnesses, and the right to have legal representation. Plaintiff was subjected to a punitive action by way of her unlawful reassignment without her consent, as direct result of a pretextual investigation. **Plaintiff's removal from her supervisory post was not one of the recommendations addressed**

3

**on the 15-6 investigation report. The report didn't ask for her removal. Responsible Management Officials failed to follow the recommendations of the report, which were lenient.** Plaintiff asserts constitutional violation occurred, because the Agency denied her the opportunity to be heard. Defendants' responsible management officials (RMO) acted under color of authority to deprive the plaintiff of due process. Defendants committed procedural errors when it violated its own rules.

9. Shortly after Puerto Rico began to recover from Hurricanes Irma and Maria, plaintiff's removal took place, and her pre-complaint interview took place on January 26, 2018 and on January 29, 2018, she filed her employment discrimination complaint with the EEOC. (Carmen Q. Dieppa v. Mark T. Esper, Secretary of the Army, DA Docket No. ARFTBUCH18JAN00284). She asserted her employer subjected her to discrimination because of her race (Hispanic), gender (female), age (DOB 01/30/1957), and retaliation based on her previous protected activity (AR 15-16 Investigation, Aug-Oct 2016, and EEOC Charge No. 510-2015-00273X). She was subjected to a *hostile work environment* by responsible management official (RMO) Tod A. Scalf, Program Director, Family & Morale, Welfare & Recreation, and Daniel J. Carter, NAF Fund Manager, Acting Program Director, FMWR, with respect to harassment when they took adverse employment action thru an unlawful immediate reassignment, affecting her promotions, time and attendance, evaluations/appraisals and terms and conditions of her federal employment. Defendants engaged in violation of Carmen Dieppa's rights, and she respectfully asks the Court to find defendants in violation of Federal Antidiscrimination Laws, specifically Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Equal Pay Act, and to award the relief requested.

## II. JURISDICTION

10. This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, and Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Equal Pay Act of 1963, as amended (Public Law 88-38), 29 U.S.C. §206(d) et al., 24 CFR 1614-408, As well as the 5th Amendment of the United States Constitution (due process) and 42 U.S.C. §1983.

11. Venue properly lies before this Court under 28 U.S.C. §1391(b). Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to her claim have occurred in this district. A substantial part of the events giving rise to this suit arose on the premises of the United States Army Fort Buchanan, located in the Commonwealth of Puerto Rico. Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

    a. This is also a proceeding for a declaratory judgment pursuant to the provisions of 28 U.S.C. §2201 and §2202 to determine the legal rights and relations of and between respective parties.

<u>Administrative Exhaustion</u>

Prior to filing this lawsuit, plaintiff filed a written charge with the Equal Employment Opportunity Commission ("EEOC"), where she placed defendants on notice of her claims under federal employment discrimination statutes. She received EEO's Notice of a Final Agency Decision on *January 9, 2019*. Accordingly, the plaintiff has exhausted administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.

### III.     PARTIES

12.     Plaintiff *Carmen Dieppa-Quintana* ("Plaintiff") is a citizen of Puerto Rico and at all relevant times is a female employed by the United States Department of the Army in the Commonwealth of Puerto Rico, at USAG-Fort Buchanan, in Puerto Rico. Plaintiff is currently sixty-two (62) years old and has worked for defendants approximately over thirty (30) years since 1988. She resides in the judicial District of Puerto Rico, and currently works at the DFMWR, Bldg. 390, Suite 100, First Floor, Fort Buchanan, in Puerto Rico.

13.     Defendant Mark T. Esper, is the actual Secretary of the Army a/k/a Department of the Army. He is sued as the head of the Department of The Army, US Army Installation Management Command. Defendants operate facilities within the judicial District of Puerto Rico, including the United States Army Garrison at Fort Buchanan. Defendant is vicariously liable for the unlawful acts and omissions of Tod A. Scalf and Daniel J. Carter, who were the responsible management officials (RMOs). Defendant's employees acted under color of federal law in the course and scope of their employment. Defendants' employees or agents participated in and/or directed the unlawful violations alleged herein or knew and failed to prevent. Williams Leyh is a GS-14 Civilian at Fort Buchanan and also took unfavorably actions against the plaintiff. Defendants treated the plaintiff unfavorably because of her race, age, gender and protected activity. Defendants were aware of unlawful conduct but failed to correct. Defendants are vicariously liable for employees or agents Tod A. Scalf, Daniel J. Carter and Williams Leyh, unlawful acts of employment discrimination.

14.     Defendant is an agent under agency of the United States Government within the meaning of 42 U.S.C. §2000e – 16.

15. Plaintiff reserves de right to amend this Complaint, if necessary, to include other employer's supervisors and/or entities that could be held vicariously liable for defendants' actions.

## IV.   FACTUAL ALLEGATIONS

16. Plaintiff Carmen M. Quintana-Dieppa, at all times relevant, was employed (NAF-04) by Directorate Family, Morale, Welfare and Recreation (FMWR) in Fort Buchanan Garrison, as the Child, Youth and School Services Coordinator. Plaintiff began to work for CYS in 1988 and has served as CYS Coordinator since 2009 and has held other leadership positions. She has worked for defendants for over thirty (30) years.

17. The Department of the Army, U.S. Army Installation Management Command, oversees the United States Army Garrison at Forth Buchanan, including the Directorate Family, Morale, Welfare and Recreation (FMWR) at Fort Buchanan, PR. Plaintiff reported to agency officials Tod Scalf and Daniel Carter, her immediate supervisors.

18. At all relevant times the plaintiff was a *Hispanic female* federal employee who belonged to a protected age group of employees (40+ years-old). She is currently sixty-two (62) years old. She was qualified for her job and has worked for defendants for the past 30 years. After complaining to management about a hostile work environment, she was subjected to retaliatory actions with a *pretextual* excuse (AR 15-6 Investigation). *As a federal employee, Dieppa had the right to due process and a fair hearing*. Defendant broke the law undermining her legal rights, while engaging in unlawful workplace discrimination practices. She had complained to the GC on Jan. 2017 and on *September 19, 2014*, the plaintiff filed a discrimination complaint against defendants with the EEOC (**Charge No. 510-2015-00273X**) alleging harassment because of *race*. Her unannounced reassignment was *reprisal* for the Army's 15-6 investigation and her prior EEO activity. Plaintiff had engaged in EEO protected activity. While working for defendant, plaintiff was subjected to *hostile work environment* by responsible management officials Tod A. Scalf and

7

Williams Leyh, and *workplace harassment* by Daniel J. Carter. Resulting in her unlawful reassignment, affecting her promotions, time and attendance, evaluation/appraisals and terms and condition of employment. Tod A. Scalf, at all relevant times, was the Director of Family, Morale, Welfare and Recreation. (FMWR), at Fort Buchanan. Daniel J. Carter was the Acting Program Director for FMWR. Both are non-Hispanic Caucasian males.

19. On June 2016, Carter asked the plaintiff to apply for a CYS Coordinator position in the U.S. (mainland) because she had been working too long at Fort Buchanan, implying plaintiff was too old to continue to work there and he wanted to exclude her.

20. Shortly after, on or about January 2017, the plaintiff received a lower performance evaluation for the period of July 1, 2015, through June 30, 2016, from Acting Program Director Daniel J. Carter, based on his unfounded allegation that supposedly she had "lost" in excess of one million dollars due to a reduction in programs. Plaintiff never received any performance standards, no counseling and no midpoint reviews.

21. Tod A. Scalf also failed to give the plaintiff performance standards for the period of July 1, 2017 through June 30, 2018, and 2018-2019. For the period of July 2016 through January 2018, plaintiff received no performance standards, midpoint reviews or performance appraisals, due by July 2017. Plaintiff was never counseled by Carter during the time frame he was acting DFMWR Director. Plaintiff was never counseled by defendants on any Supervisory issues.

22. On or about May 2017, Daniel Carter *refused to promote* the plaintiff to NF-05, a CYS Coordinator position available in the CYS manning document dated July 26, 2017. Carter told the plaintiff he was not going to promote her. Dieppa was *denied a promotion* from CYSS Coordinator NF-04 to CYSS Coordinator, NF-05. The CYS Coordinator's position was eventually opened on January 2018, as NF-1701-05. Plaintiff suffered unlawful discrimination by defendant. Tod informed plaintiff she would not be considered for the position because of the investigation.

8

23. On November 17, 2017, plaintiff was removed from her *supervisory* position in Child Youth & School Service (CYSS), NF-04, and unlawfully reassigned to a newly created non-supervisory position as Project Manager, and immediately placed on administrative leave. She was told *she would be escorted* to retrieve her personal items when she returned. Tod Scalf issued the reassignment letter that was given to her *the same day*, based on results of an AR 15-6 investigation conducted from August through October 2016. She was verbally told by Tod Scalf that she *didn't have the right to file a rebuttal or appeal* her immediate reassignment. She was *reassigned without her consent or prior notice*. This reassignment was a *de facto* demotion. She was asked to return all the CYS keys and told to go home. She was also told by Tod Scalf that she needed to be escorted by him and Dan Carter to pick-up her belongings. Scalf then put her on administrative leave. Plaintiff's office personal belongings were placed in boxes by other employees at behest of Scalf.

24. Shortly after, on or about November 20, 2017, plaintiff received a text message from Scalf stating "where are you", "you supposed to be here today at 0800hrs, your sick leave request will not be approved, and you will be charged annual leave" But the plaintiff was already on *approved* sick leave. She was informed by Scalf that he was not approving her sick leave.

25. On or about January 4, 2018, plaintiff received a text message from Tod A. Scalf stating the "your leave ended yesterday, 3 Jan 2018, report for duty". Plaintiff Dieppa had an approved annual leave *until* January 5, 2018. On or about January 5, 2018, she was forced by Programs Director Tod Scalf, to show up to work when she was still on sick leave, only to be told to go back home. Scalf unlawfully asked Dieppa to come into work while she was on leave.

26. Defendants immediately replaced (for approx. 30 days) the plaintiff with a non-Hispanic *Caucasian* individual (*under 40*) who was under Carmen Dieppa's Protected Age Group.

27. The Army investigation 15-6 conducted from August 25, 2016 through October 5, 2016 by MAJ Diaz Efrain and Fratallone from the ILO Office, was an informal investigation to

9

determine factual information of alleged violations of the Army Regulation 600-20, paragraph 2-1, as it applied to the tenants of dignity and respect towards Plaintiff's employees. During said investigation Carmen Dieppa expressed concerns but was not afforded rebuttal. This investigation was defendant's retaliation for her prior EEO Complaint participation, for employment discrimination against Col. Caryn Heard, prior Garrison Commander and against Williams Leyh.

28. The plaintiff comes before this Court to seek what is deemed to be fair and just, that defendants' decision be subject to judicial review and vacated.

### V. CAUSES OF ACTIONS

### COUNT I: Due Process Violation (5th. Amendment)

29. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

30. Defendant unlawfully-interfered with plaintiff's constitutionally guaranteed right to due process by unlawfully demoting her without the required 14-day advance notice and failing to afford her the right to rebuttal or appeal management's decision. Management's unlawful decision directly affected her terms and conditions of employment, including her promotion. AR 215-3 Nonappropiated Funds Instrumentalities Personnel Policy (5) required her employer to provide a 14-day advance notice to the employee.

31. Plaintiff asserts defendant interfered with his Fifth Amendment right due process guaranteed by the Bill of Rights of the Constitution of the United States.

### COUNT II: Depravation of Rights (42 U.S.C. §1983)

32. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

33. Defendant is subject to prosecution for interfering with federal employee's rights, under 42 U.S.C. §1983. Defendant acted under color of federal law in the course and scope of

employment. Defendants' responsible management officials are employees and/or agents of a Federal Agency and participated in and/or directed unlawful violation of plaintiff's *due process* rights. Defendants unlawfully interfered with plaintiff's public employee property right to her job, with respect to the *terms and conditions of employment*, by demoting her to a clerical position (non-supervisory) without prior notice and due process of law. Plaintiff's removal from her supervisory post didn't conform with agency regulation or procedural due process notice required.

### COUNT III: Violation of Equal Pay Act (29 U.S.C. §216(b)/29 U.S.C. §1614.408)

34. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

35. Defendants engaged in the unlawful willful violation of the Equal Pay Act, when management officials engaged in sex-based discrimination, when it (1) refused to promote the plaintiff and (2) unlawfully removed her from her supervisory role and placed her in clerical position.

36. Plaintiff terms and conditions of employment, including her promotions were adversely affected by defendants unlawful actions.

### COUNT IV: Gender Discrimination/Violation of Title VII of the Civil Right Act

37. The foregoing paragraphs are realleged and incorporated by reference herein.

38. Defendants' conduct as alleged at length herein constitutes discrimination based on *gender* in violation of Title VII. The stated reason for defendant's actions were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus*.

39. Plaintiff was subjected to *hostile work environment* and *gender discrimination*, after she complained about her male supervisors. Male employees were treated more favorably, and her employer failed to protect her from unlawful gender-based discriminatory conduct.

40. This conduct was based upon and directed at plaintiff by reason of her *gender*. Although, the plaintiff notified management, which was otherwise aware of this, it failed to take appropriate action, and the discriminatory conduct was severe and pervasive so as to unreasonably interferer with the work she performed, work conditions and create a *hostile work environment*.

41. Plaintiff suffered willful sex-based and/or gender discrimination in the workplace because she was treated unfavorably by her employer, because she was a *woman*. As a result, she was treated less favorably than male counterparts and exposed to disparate disciplinary procedures. Adverse action was taken against her because she didn't conform to male Supervisor's employee stereotypes. By exercising preference towards male employees, so as to increase probability of continued employment, over a female employee who was better qualified, defendants violated the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.

## COUNT V: Violation of the Age Discrimination in Employment Act
## (29 U.S.C.A. §621 et. seq.)

42. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

43. The Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their *age*. Plaintiff was approximately sixty-one (61) years of age when subjected to age discrimination.

44. Shortly after the plaintiff was reassigned, an employee who was much younger and with less experience, who was outside plaintiff's protected age group, was allowed to continue performing plaintiff's tasks. Employees under her protected age group were promoted. Comments made by supervisors implied she was too old to continue to work and they sought to exclude her. Defendants placed a non-Hispanic Caucasian (brought from mainland USA) under plaintiff's protected age group to perform her functions.

45. Defendants' reason for employment action was *pretext* to conceal supervisor's *animus* to engage in age discrimination and exclude her from the workplace. Defendants discriminated against the plaintiff on the basis of her *age*.

46. Defendants are jointly and severally liable.

### COUNT VI: Unlawful Retaliation

47. The foregoing paragraphs are realleged and incorporated by reference herein.

48. On September 19, 2014, the plaintiff filed a harassment discrimination complaint against defendants with the EEOC (Charge No. 510-2015-00273X) alleging harassment because of her national origin (Hispanic). Agency No. RD-2014-00799.

49. Defendant's conduct as alleged at length herein constitutes workplace retaliation because plaintiff had engaged in protected activity to report unlawful work practices. Williams Leyh was aware plaintiff had already complained about a hostile work environment. Williams Leyh was involved in the decision to reassign the plaintiff without her consent or prior notice. Defendants failed to put a stop and/or to prevent unlawful retaliation.

50. The stated reason for defendants' conduct was not the true reason, but instead a *pretext* to hide retaliatory *animus*. The Court will find that supervisors illegally retaliated against plaintiff by unjustly subjecting her to *unjust scrutiny*, *false allegations of misconduct* and her unlawful reassignment without due process, because she opposed unlawful workplace practices and was willing to testify against her employer. Defendant's conduct constitutes a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. Title VII prohibits employers from discriminating against any employee on the basis of her gender and prohibits retaliation against an employee who asserts her rights under the law. Defendant's conduct violates statutory prohibition of employment retaliation. 29 USCA §215 (a) (3).

51. In the present case, the Court will find that the plaintiff engaged in protected activity when she complained to the EEOC about supervisor's discriminatory actions towards her because of her race, later complained about a hostile work environment, and she was later subjected to a fabricated administrative investigation. Because plaintiff had reported unlawful work practices, Supervisor was aware she would testify against them, and *chose* to plot a way to unlawfully exclude her from work, precisely using a fabricated pretextual investigation to discriminate.

52. The plaintiff will proffer direct and circumstantial evidence to show that employer's reason for her reassignment was a *pretext* to conceal employer's management retaliatory *animus*.

53. Plaintiff should be entitled to substantial award of *punitive damages*, as defendants engaged in retaliatory conduct with *malice* or *reckless indifference* to her protected rights. Title VII authorizes punitive damages when a plaintiff demonstrates that the defendants engaged in *intentional* discrimination with malice or reckless indifference to the federally protected rights of an aggrieved individual. See *Rodriguez-Torres*, 399 F. 3d at 64 (quoting 42 U.S.C. §1981a (b) (1)). See also *Kolstan v. American Dental Ass'n.*, 527 U.S. 526 [(1999)]

54. The Court will find that prohibited retaliation is not limited to discriminatory actions affecting the terms and conditions of employment but can also include an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." See *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 52 (2006). Removing the plaintiff from the workplace with a pretextual excuse without affording due process, only to be placed in a non-supervisory position and forced to take administrative leave was meant to dissuade any coworkers.

55. Defendants are jointly and severally liable.

**COUNT VII: Discrimination by Race/Violation of Title VII of the Civil Right Act**

56. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

57.     Defendants engaged in the unlawful willful violation of Title VII of the Civil Rights Act because responsible management officials were Caucasians non-Hispanic (white) and the plaintiff was Hispanic (Puerto Rican). She was treated less favorably because of her race, when she was denied a promotion and removed from her supervisory position, and all other similarly situated persons non-Hispanic. She was the only NAF employee Hispanic person working under the direct supervision of responsible management officials in a supervisory position. She was subject to race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

58.     Plaintiff terms and conditions of employment were affected by unlawful actions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays the Honorable Court declares Defendant's conduct was unlawful, in violation of procedural due process requirements, and the legal statutes herein identified, undermined federal employee rights, and that it grants the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.
B. That this Honorable Court reverse defendant's agency decision and plaintiff Carmen Dieppa-Quintana be reassign back to the CYS Coordinator's Position. Plaintiff asks the Court the reverse the reassignment from the NF-0301-04 Project Manager Position back to the CYS Coordinator Position. As well as defendant's compliance with promoting her to the NF-1701-05 for which she was qualified prior to reassignment.
C. Order expunction of plaintiff's OPF letters showing unfavorably or derogatory information with regards to the 15-6 investigation.
D. That this Honorable Court award ***compensatory and general damages*** in the amount of **$1,200,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for violation of her rights, as provided by laws of the United States.
E. This Honorable Court instruct defendant to take immediate appropriate disciplinary actions with respect to the responsible management official (RMO), for their willful

violation of Public Law 92-261, AR 215-3, AR-15-6, AR 690-12 IAW among other regulation and applicable penalties.

F. That this Honorable Court issue Order for defendant to submit management and supervisors immediately to EEOC training and Federal employment laws.

G. That this Honorable Court issue Order for the appointment of an external monitor to supervise, investigate and ascertain the existence of unlawful disciplinary actions and to render a report to corresponding federal government entities, including US Congress.

H. That this Honorable Court enjoins Defendant from engaging in additional unlawful attempt to interfere with plaintiff's statutory rights.

I. That this Honorable Court award Plaintiff costs, expenses, and attorney's fees.

J. Pre-judgment interest; and as indicated above, the Plaintiff seeks *compensatory* damages, *statutory* damages, *punitive* damages, *injunctive relieve* and any other relief this Court deems equitable, just and appropriate.

## VI. JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 27th. day of March 2019.

Respectfully submitted,

| | |
|---|---|
| /S/ Humberto Cobo-Estrella | /S/ Winston Vidal-Gámbaro |
| Humberto Cobo-Estrella, Esq. | Winston Vidal-Gámbaro |
| **USDC-PR230108** | **USDC-PR 130401** |
| PO Box 366451 | PO Box 193673 |
| San Juan, Puerto Rico 00936-6451 | San Juan, Puerto Rico 00919-3673 |
| Tel. (787) 529-7140 | Tel. (787) 751-286 |
| Email: hcobo@hcounsel.com | Email: wvidal@prtc.net |
| | wvidal.law@gmail.com |

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading has been served by U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

    /S/ Humberto Cobo-Estrella, Esq.
    *Attorney for the Plaintiff*