THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN QUINTANA-DIEPPA,**

    **Plaintiff,**

    v.

**DEPARTMENT OF THE ARMY,**

    **Defendants.**

**Civil No. 19-1277 (ADC)**

## **OPINION & ORDER**

Defendant Mark T. Esper, Secretary of the Department of the Army ("defendants") filed a motion for partial dismissal of the complaint. **ECF Nos. 7, 8**. Plaintiff Carmen Quintana-Dieppa ("plaintiff") opposed the motion. **ECF No. 14**. Defendant replied. **ECF No. 20**. For the following reasons, the motion for partial dismissal is **GRANTED**. **ECF Nos. 7, 8.**

### I.     Background

Plaintiff, a 62-year-old female, began working for the United States Department of the Army in 1988. **ECF No. 1** at 6. At all relevant times, she was employed as a Child and Youth Services ("CYS") Coordinator (NF-1701-04) by the Directorate of Family and Morale, Welfare and Recreation ("FMWR"), a Non-Appropriated Funds ("NAF") Instrumentality at Fort Buchanan. *Id.* at 7. Plaintiff reported to agency officials Tod Scalf, Director of FMWR at Fort Buchanan, and Daniel Carter, Acting Program Director, both her immediate supervisors. *Id.* at 7-8. At some point, plaintiff complained about being subjected to hostile work environment by

Scalf and Williams Leyh[1], and to workplace discrimination and/or harassment by Carter. *Id.* On September 14, 2014, plaintiff filed a complaint with the EEOC against defendants, alleging discrimination because of her national origin[2]. *Id*. at 13. Plaintiff points to various incidents between 2016 and 2017, including Carter's purported refusal to promote her to a CYS Coordinator NF-05 position, poor performance reviews in 2017, and failure to review her performance during some periods in 2017, 2018, and 2019. *Id.* at 8.

On November 17, 2017, plaintiff received notice of removal from her position as CYS Coordinator via a letter dated November 16, 2017 and signed by Scalf. **ECF No. 1** at 1, 2, 9. That day, she was reassigned to a newly created position as Project Manager (NF-04) - a *de facto* demotion to a non-supervisory position - and immediately placed on administrative leave. *Id.* Plaintiff was asked to return her office keys and told to go home. *Id.* According to the complaint, the reassignment was based on the result of an AR 15-6 investigation conducted from August to October 2016 regarding violations to the Army Regulation 600-20, section 2-1's chain of command policies.[3] *Id*. at 1-4, 7-9, 14. Plaintiff contends that the AR 15-6 investigation was a pretext for discrimination based on her age, race and gender, and an act of retaliation because of her 2014 EEOC complaint. *Id*. Plaintiff further avers that defendants did not provide the required 14-day notification prior to her reassignment in violation of agency regulations, nor

---

[1] Plaintiff describes Leyh as a GS-14 Civilian at Fort Buchanan. **ECF No. 1** at 6.
[2] Plaintiff also alleges that her EEOC complaint was based on race discrimination. **ECF No. 1** at 7. At this juncture, the Court need not delve into the specific contents of her EEOC complaints.
[3] On November 17, 2017, defendants also provided plaintiff with a copy of the report of the AR 15-6 investigation results. **ECF No. 1** at 2.

allowed plaintiff to file a rebuttal, oppose, or appeal the investigation results or her reassignment, all in violation of her due process rights. *Id.* at 1, 2, 9, 10. She also alleges that defendants' actions were motivated by a discriminatory animus because of her age and gender, and indeed she was replaced by a non-Hispanic Caucasian individual under 40. *Id.* at 9, 12, 15.

On or around November 20, 2017, while on approved sick leave, plaintiff received a text message from Scalf inquiring where she was, noting she was supposed to be at work at 8:00am. She was also warned that her sick leave would not be approved, and that she would be charged annual leave. **ECF No. 1** at 9. On January 4, 2018, although defendant was on approved annual leave until January 5, 2018, Scalf sent her another text message stating that her leave had ended and requesting that she report for duty. *Id.*

On January 29, 2018, plaintiff filed another EEOC complaint alleging race, gender, and age discrimination, and retaliation based on her previous protected activity. **ECF No. 1** at 4. She argued that the *de facto* demotion to a non-supervisory position affected her promotions, time and attendance, evaluations, terms and conditions of federal employment. *Id.* The EEOC issued its decision on January 9, 2019. *Id.* at 1.

Plaintiff now alleges due process violations under the Fifth Amendment, deprivation of rights pursuant to 42 U.S.C. § 1983, violation of the Equal Pay Act ("EPA"), 29 U.S.C. §206(d), retaliation, and gender and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, respectively. **ECF. No. 1** at 10-15. She further contends that defendants

violated the EPA when management officials engaged in sex-based discrimination, refused to promote her, and unlawfully removed her from her supervisory role. *Id.* at 11.

In its motion for partial dismissal, defendants argue that this Court lacks subject matter jurisdiction as to plaintiff's Fifth Amendment, §1983, and EPA claims. Namely, defendants posit that the Department of the Army has not waived its sovereign immunity, its employees acted under the color of federal law and thus, are not subject to §1983 liability. Moreover, they proffer that her EPA claims exceed the statute's monetary limits depriving this Court of jurisdiction. Even so, they argue that plaintiff fails to show any entitlement to relief under the EPA, which addresses wage disparities. Lastly, defendants contend that plaintiff's constitutional and discrimination claims are preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. §101 *et seq.*, Title VII and the ADEA. **ECF No. 10** at 5-11.

Plaintiff opposed, arguing that defendants' motion is "premature" and "without merits". **ECF No. 14** at 1. According to plaintiff, construing the allegations of the complaint in her favor and accepting all factual allegations as true, she sets forth valid and independent discrimination and due process claims which are not preempted by the CSRA, Title VII and the ADEA. *Id.* She further argues that the complaint's factual underpinnings support a claim under the EPA. *Id.*

In their reply, defendants reiterate that plaintiff fails to rebut the fact that, despite the complaint's factual allegations, her Fifth Amendment and §1983 claims are preempted by the CSRA, Title VII and the ADEA. **ECF No. 20**. They also point to plaintiff's failure to cite any legal support showing that this Court retains jurisdiction over her EPA claims. *Id.*

## II. Standard of Review

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." *González v. Otero*, 172 F. Supp. 3d 477, 495 (D.P.R. 2016) (citing *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002)). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Id.*

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). A complaint, so construed, must be dismissed under Rule 12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims.

Courts also favorably construe a complaint when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "If the factual

allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*).

### III. Analysis

#### A. Plaintiff's § 1983 claims fail

It is well settled that under 42 U.S.C. § 1983, a plaintiff can bring a "private right of action against a person who, *under color of state law*, deprives another of rights secured by the Constitution or by federal law."[4] *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011) (citing *Redondo-Borges v. U.S. Dep't of HUD*, 421 F.3d 1, 7 (1st Cir. 2005)); *see also Natal-Rosario v. Puerto Rico Police Dept.*, 639 F. Supp. 2d 174, 180 (D.P.R. 2009). However, it cannot form the basis of an action against individuals acting under color of federal law or against a federal agency. *Rogers v. Vicuna*, 264 F.3d 1, 4 (1st Cir. 2001). There is no dispute that plaintiff's allegations hinge on defendants' actions under color of federal law. **ECF No. 1** at 2-3. As such, plaintiff's claims under § 1983 necessarily fail.

Construing the complaint in the light most favorable to plaintiff, the Court may infer that she constructively argues a *Bivens* claim arising out of defendants' purported violations of her due process rights. **ECF No. 1** at 9-10. Specifically, plaintiff alleges that she was not provided with adequate procedural due process as outlined in federal regulations, including advance

---

[4] The First Circuit noted that section 1983's "under color of state law" requirement is the functional equivalent of the Fourteenth Amendment's "state action" requirement. *Santiago v. Puerto Rico,* 655 F.3d 61, 68 (1st Cir. 2011).

notice about her reassignment, as well as the right of rebuttal and to appeal both the results of the AR 15-6 investigation and the reassignment. *See* **ECF No. 1**.

The *Bivens* doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law. *McCloskey v. Mueller*, 446 F.3d 262, 271-272 (1st Cir. 2006) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971)); *see also Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000). Nonetheless, it is well settled that a *Bivens* action will not lie against an agency of the federal government. *Riley*, 209 F.3d at 28 (citing *FDIC v. Meyer*, 510 U.S. 471, 486 (1994)). It "can only be brought against federal officials in their individual capacities. Even then, the plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of Bivens liability." *Riley*, 209 F.3d at 28 (collection of cases); *see also Tapia-Tapia v. Potter*, 322 F.3d 742, 746 (1st Cir. 2003) (finding that appellant did not have a viable *Bivens* claim against the Postmaster General since he was sued only in his official capacity and *Bivens* suits only can be brought against federal officers in their individual capacities).

Plaintiff's complaint fails to state and assert that any of the defendants are sued in their individual capacity. In fact, plaintiff's allegations consistently refer to defendants acting in their official capacities, "under color of federal law" and within the "course and scope of their employment". *See* **ECF No. 1** at 6, 10-11. Consequently, any possible *Bivens* claim fails. Even if plaintiff's complaint could somehow be interpreted to include claims against defendants in their individual capacity, *Bivens'* applicability in this case is barred on other grounds.

The Supreme Court held that *Bivens* claims should be precluded when "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Herbst v. United States Postal Serv.*, 953 F. Supp. 2d 463, 467 (E.D.N.Y. 2013) (citing *Carlson v. Green* 446 U.S. 14, 18 (1980)). Indeed, "one of the special factors that counsels hesitation in permitting a Bivens remedy is the 'comprehensiveness of available statutory schemes' to remedy a plaintiff's injury." *Id.* (citing *Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009)).

Such is the case with the CSRA, which "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (citing *United States v. Fausto*, 484 U. S. 439, 455 (1988)). "This comprehensive scheme supersedes any independent judicial remedy." *Hernández v. Department of the Army*, 927 F. Supp. 570, 574 (D.P.R. 1996). Certainly, "there is no basis for extending the Bivens doctrine to claims alleging arbitrary or discriminatory treatment in those precincts of the federal workplace patrolled by the CSRA and Title VII." *González v. Vélez*, 864 F.3d 45, 54-55 (1st Cir. 2017).

As defendants correctly point out, plaintiff's claims for alleged violations of her due process, retaliation, and discrimination are preempted by the CSRA, Title VII and the ADEA.

### B. Plaintiff's due process, retaliation, and discrimination claims are preempted by the CSRA, Title VII and ADEA

Plaintiff contends that her supervisors investigated and reassigned her, disregarding her due process rights, and discriminated against her because of her race, gender and age, and in

retaliation for prior protected activity. It is well settled that "[t]he CSRA preempts challenges to personnel actions brought under federal law."[5] *Berríos v. Department of Army*, 884 F.2d 28, 30 (1st Cir. 1989). In *Bush v. Lucas*, 462 U.S. 367 (1983), the United States Supreme Court addressed whether a federal employee could recover damages for defamation and violation of his First Amendment constitutional rights. The Court declined to create a constitutional claim for damages among federal employees given the existing CSRA's "elaborate remedial system...constructed step by step, with careful attention to conflicting policy considerations." *González v. Otero*, 172 F. Supp. 3d 477, 504, 2016 (citing *Bush*, 462 U.S. at 388-390). Accordingly, it held that a plaintiff seeking to recover damages for unconstitutional actions in federal personnel decisions is limited to the remedial scheme established by the CSRA. *Id.*; *see also Berríos*, 884 F.2d at 30-31. On this point, the Court emphasized:

> Federal civil servants are now protected by an elaborate comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures -- administrative and judicial -- by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies. Constitutional challenges to agency action . . . are fully cognizable within this system.

*Bush*, 462 U.S. at 385-86. The "[e]xclusivity of the remedial scheme provided by the CSRA is necessary to effectuate the statutory design, 'balancing the legitimate interests of the various categories of federal employees with the needs of sound and efficient regulation.'" *Desmond v. Department of Defense*, No. 92-2201, 1993 U.S. App. LEXIS 5195, *8 (1st Cir. Mar. 19, 1993) (citing

---

[5] The CSRA provides NAF employees their exclusive remedy for federal employment personnel actions. *Hernández v. Department of the Army*, 927 F. Supp. 570, 575 (D.P.R. 1996).

*Fausto*, 484 U.S. 439). To that end, the CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443. This Circuit, closely following *Bush*, has refused to entertain constitutional claims by federal employees outside the scope of the CSRA. *Otero*, 172 F. Supp. at 504; *Roth v. United States*, 952 F.2d 611 (1st Cir. 1991); *Berríos*, 884 F. 2d at 31. In so doing, the Court noted that "[e]ngrafting new causes of action on an ad hoc basis would create a patchwork that perpetuates the same infirmities that the CSRA was designed to avoid." *González*, 864 F.3d at 55.

The CSRA permits federal employees to challenge "prohibited personnel practices" by their supervisors, including unconstitutional personnel actions. *Otero*, 172 F. Supp. 3d at 504 (citing 5 U.S.C. § 2302). The definition of "personnel actions" includes promotions, reassignments, performance evaluations, disciplinary or corrective actions, or decisions concerning pay, benefits, or awards, among others. 5 U.S.C. § 2302(2)(A).[6] *Bolivar v. Director of the FBI*, 846 F. Supp. 163, 168 (D.P.R. 1994); *see Rivera-Avilés v. United States DOJ*, No. 12-1063, 2013 U.S. Dist. LEXIS 127744, *17 (D.P.R. Sept. 5, 2013) (finding that defendants' decision to reassign plaintiff is a personnel action that must also be addressed under the CSRA).

---

[6] The CSRA defines "personnel action" to include "a detail, transfer, or reassignment" and "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a) (2009). It also proscribes employees from discriminating based on race, color, religion, sex or national origin as prohibited under Title VII and on the basis of age as prohibited under the ADEA. 5 U.S.C. §2302(b)(1)(a) & (b). The CSRA further prohibits employees from taking personnel action with respect to an employee for exercising their right to file a complaint or grievance as allowed by law. *Id.* at §2302(b)(8) & (9).

The actions challenged via plaintiff's constitutional claims are clearly "personnel actions" within the meaning of the CSRA. She asserts due process violations via the improper implementation of personnel policy, namely the lack of notification prior to her reassignment, the deprivation of her right to rebut the investigation findings, and to appeal the investigation results. She further objects to the reassignment to a new position, alleged denial of a promotion, and the rating of various performance evaluations. As in *Berríos*, "given that plaintiff's constitutional claims amount to a federal law challenge to an adverse personnel action, they are preempted by the CSRA consistent with the reasoning of Bush and Fausto." *Berríos*, 884 F.2d at 31.

The CSRA and Title VII, "with their regulatory accoutrements, form a comprehensive remedial network fully capable of protecting federal employees against acts of discrimination in the workplace", such as the ones alleged by plaintiff. *González*, 864 F.3d at 54. Specifically, Title VII preempts constitutional claims flowing from alleged employment discrimination. *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 144, 2016 (citing *Elgin*, 567 U.S. 1, and *Fausto*, 484 U.S. at 455); *see also Rivera-Rosario v. U.S. Dept. of Agriculture,* 151 F.3d 34, 38 (1st Cir. 1998) (finding that "where the gravamen of the complaint is Title VII discrimination, the only remedy available is under Title VII"); *Díaz-Romero v. Ashcroft*, 472 F.Supp. 2d 156, 161 (D.P.R. 2007) (finding that Title VII remedies for federal employees are exclusive). In the same fashion, the ADEA provides the exclusive federal remedy for age discrimination in employment, and thus preempts judicial remedies based directly on the Constitution for claims of age discrimination in federal

employment. *Tapia-Tapia v. Potter*, 322 F.3d at 745; *Castro v. United States*, 584 F. Supp. 252, 259, 1984. Since plaintiff's constitutional and discrimination claims fall squarely under the CSRA, Title VII and the ADEA's purview, this Court lacks subject matter jurisdiction as to plaintiff's Fifth Amendment and §1983 claims, which are **DISMISSED WITH PREJUDICE**.

### C. EPA Claims

Defendants' request for dismissal as to plaintiff's EPA claims is twofold; they allege lack of jurisdiction and failure to state a claim. **ECF No. 8**.

As to the jurisdictional matter, it is well established that EPA claims brought to the district courts must satisfy the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491. *Hunter v. Rice*, 480 F. Supp. 2d 125, 131 (D.D.C. 2007). Section 1346(a)(2), known as the "Little Tucker Act", confers concurrent jurisdiction in district court and the Claims Court for civil actions against the United States not exceeding $10,000 in amount. *Id.* (citing 28 U.S.C. § 1346(a)(2)); *see also Iyer v. Everson*, 382 F. Supp. 2d 749, 759 (E.D. Penn. 2005). The Court of Federal Claims, however, has exclusive jurisdiction over monetary claims under EPA exceeding $10,000. *Hunter*, 480 F. Supp. 2d at 131 (citing 28 U.S.C. § 1491). Since plaintiff seeks "damages far in excess of this statutory limit, jurisdiction to hear this claim is not vested within this court." *Díaz v. McHugh*, No. 08-1767 (GAG), 2009 U.S. Dist. LEXIS 119031, *3 (D.P.R. Dec. 22, 2009) (citing *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997)); *see also Iyer*, 382 F. Supp. 2d at 759 (collection of cases). Accordingly, dismissal for lack of jurisdiction is proper.

Even if this Court had jurisdiction, plaintiff fails to state a valid claim under the EPA. In the complaint, plaintiff proffers that defendants violated the EPA "when management officials engaged in sex-based discrimination, when [they]: (1) refused to promote the plaintiff and (2) unlawfully removed her from her supervisory role and placed her in a clerical position." **ECF No. 1** at 11. She also contends that the terms and conditions of her employment, including promotions, were adversely affected by defendants' actions. *Id.* There are, however, no factual allegations regarding unequal wages based on her gender, and no mention of any alleged wage disparities in any context.

Under the EPA, a plaintiff must first establish that "the employer paid different wages to an employee of the opposite sex for substantially equal work." *Rodríguez v. SmithKline Beecham Pharm., P.R., Inc.*, 62 F. Supp. 2d 374, 382 (D.P.R. 1999) (citing *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir. 1995). This requires proving that the employer pays different wages to employees of the opposite sex, who perform equal work on jobs requiring equal skill, effort, responsibility, and performed under similar working conditions. *Id.* (citations omitted). Plaintiff does not proffer wage disparity between herself and her supervisors or make any showing under the required EPA standard to show a plausible entitlement to relief. Instead, her claims are based on alleged discriminatory actions based on her gender, which are under the sole purview of Title VII and the CSRA. Accordingly, plaintiff's EPA claims are **DISMISSED with prejudice**.

## IV. Conclusion

Defendants' motion for partial dismissal is **GRANTED**. **ECF Nos. 7, 8**. Plaintiff's claims of due process under the Fifth Amendment, under the EPA and §1983 are **DISMISSED WITH PREJUDICE**. Clerk of Court is to enter partial judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 25th day of March 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**